1 | KANTOR & KANTOR LLP
GLENN R. KANTOR (SBN: 122643)
2 |  E-mail: gkantor@kantorlaw.net
TIMOTHY J. ROZELLE (SBN 298332)
3 |  E-mail: trozelle@kantorlaw.net
19839 Nordhoff Street
4 | Northridge, California 91324
Telephone:  (818) 886-2525
5 | Facsimile: (818) 350-6272

6

7 | Attorneys for Plaintiffs,
GABRIELLA RAYGOZA AND BENJAMIN
8 | RAYGOZA, on behalf of themselves and all
others similarly situated

9

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12

13

14 | GABRIELLA RAYGOZA AND          )  **CASE NO.:** 2:15-cv-3741
BENJAMIN RAYGOZA, on behalf of  )
15 | themselves and all others similarly )  COMPLAINT FOR BREACH OF THE
situated,                        )  EMPLOYEE RETIREMENT INCOME
16 |                                  )  SECURITY ACT OF 1974;
                                 )  ENFORCEMENT AND
17 |               Plaintiffs,        )  CLARIFICATION OF RIGHTS;
                                 )  PREJUDGMENT AND
18 |      vs.                         )  POSTJUDGMENT INTEREST;
                                 )  ATTORNEYS' FEES AND COSTS;
19 |                                  )
CONAGRA FOODS, INC. MEDICAL      )  VIOLATIONS OF THE FEDERAL
20 | PLAN, BLUE CROSS AND BLUE        )  MENTAL HEALTH PARITY ACT;
SHIELD ASSOCIATION, BLUE         )
21 | CROSS AND BLUE SHIELD OF         )  VIOLATIONS OF THE CALIFORNIA
NEBRASKA,                        )  MENTAL HEALTH PARITY ACT
22 |                                  )
                                 )
23 |               Defendants.        )  **CLASS COMPLAINT**
                                 )
24 | _____ )

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Autism spectrum disorder (ASD) is a group of developmental disabilities that can cause significant social, communication and behavioral challenges.  ASD is a complex neurological and developmental disorder that begins early in life and affects how a person acts and interacts with others, communicates, and learns.  ASD affects the structure and function of the brain and nervous system.  Because it affects development, ASD is called a developmental disorder**.**  ASD can last throughout a person's life.  People with this disorder have problems with communication and interaction with other people, restricted interests and repetitive behaviors.  Different people with autism can have different symptoms. For this reason, autism is known as a spectrum disorder—which means that there is a range of similar features in different people with the disorder.  In giving a diagnosis of ASD, a health care provider will also specify whether the person also has intellectual problems, including problems with reasoning or memory and/or language problems and behavior.

About 1 in 68 children has been identified with autism spectrum disorder (ASD) according to the most recent estimates from Centers for Disease Control and Prevention's (CDC) Autism and Developmental Disabilities Monitoring (ADDM) Network.  ASD is reported to occur in all racial, ethnic, and socioeconomic groups.  ASD is almost 5 times more common among boys (1 in 42) than among girls (1 in 189).  About 1 in 6 children in the United States had a developmental disability in 2006-2008, ranging from mild disabilities such as speech and language impairments to serious developmental disabilities, such as intellectual disabilities, cerebral palsy, and autism.

Behavior Analysis is the scientific study of behavior.  Applied Behavior Analysis (ABA) is the application of the principles of learning and motivation from Behavior Analysis, and the procedures and technology derived from those principles, to the solution of problems of social significance.  Many decades of research have validated treatments based on ABA.

***The Report of the MADSEC Autism Task Force (2000) provides a succinct description, put together by an independent body of experts:***

Over the past 40 years, several thousand published research studies have documented the effectiveness of ABA across a wide range of:

- populations (children and adults with mental illness, developmental disabilities and learning disorders)
- interventionists (parents, teachers and staff)
- settings (schools, homes, institutions, group homes, hospitals and business offices), and
- behaviors (language; social, academic, leisure and functional life skills; aggression, self injury, oppositional and stereotyped behaviors)

ABA is the process of systematically applying interventions based upon the principles of learning theory to improve socially significant behaviors to a meaningful degree, and to demonstrate that the interventions employed are responsible for the improvement in behavior (Baer, Wolf & Risley, 1968; Sulzer-Azaroff & Mayer, 1991).

"Socially significant behaviors" include reading, academics, social skills, communication, and adaptive living skills. Adaptive living skills include gross and fine motor skills, eating and food preparation, toileting, dressing, personal self-care, domestic skills, time and punctuality, money and value, home and community orientation, and work skills.

ABA methods are used to support persons with autism in at least six ways:

- to increase behaviors (e.g. reinforcement procedures increase on-task behavior, or social interactions);
- to teach new skills (e.g., systematic instruction and reinforcement procedures teach functional life skills, communication skills, or social skills);
- to maintain behaviors (e.g., teaching self-control and self-monitoring

procedures to maintain and generalize job-related social skills);

- to generalize or to transfer behavior from one situation or response to another (e.g., from completing assignments in the resource room to performing as well in the mainstream classroom);

- to restrict or narrow conditions under which interfering behaviors occur (*e.g.*, modifying the learning environment); and

- to reduce interfering behaviors (e.g., self-injury or stereotypy).

ABA is widely recognized as a safe and effective treatment for autism.  It has been endorsed by a number of state and federal agencies, including the U.S. Surgeon General, the California Department of Insurance and the California Department of Managed Health Care. Over the last decade, the nation has seen a particularly dramatic increase in the use of ABA to help persons with autism live happy and productive lives.  In particular, ABA principles and techniques can foster basic skills such as looking, listening and imitating, as well as complex skills such as reading, conversing and understanding another person's perspective.

Despite these alarming statistics and the wealth of information available, Defendants ConAgra Foods, Inc. ("ConAgra"), Blue Cross and Blue Shield Association, and Blue Cross and Blue Shield of Nebraska (collectively "Defendants") are violating legal duties owed to health insurance plan participants and beneficiaries by improperly restricting the scope of their insurance coverage for mental health treatment.  These restrictions are inconsistent with the terms of the relevant BCBS insurance plans and generally accepted standards of mental health care and are in violation of the California Mental Health Parity Act and the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Mental Health Parity Act").  *See* 29 U.S.C. § 1185(a); Cal. Ins. Code § 10144.51; Cal. Health & Safety Code § 1374.73; Cal. Code Regs. tit. 10, § 2562.1-2562.4.

Plaintiff Benjamin Raygoza was diagnosed with autism and prescribed ABA

therapy.  Because they have been, and are likely to continue to be, harmed by Defendants' misconduct, Plaintiffs Gabriela and Benjamin Raygoza bring this complaint against Defendants on behalf of themselves and all others similarly situated.  In support of their claims, Plaintiffs allege upon personal knowledge as to themselves and their own acts, and upon information and belief based upon, *inter alia*, the investigation made by and through their attorneys (including review of publicly available information concerning Defendants' guidelines and correspondence sent by Defendants to Plaintiffs) as to all other matters, as follows:

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

1.      Plaintiffs Gabriela and her son Benjamin, who was diagnosed with Autism Spectrum Disorder (ASD), are each insured by a health insurance plan that is sponsored by their (or, in the case of Benjamin Raygoza, his mother's) employer and governed by the Employee Retirement Income Security Act of 1974 ("ERISA") ("Plaintiffs' Plans"). Plaintiff Benjamin Raygoza was prescribed ABA Therapy.

2.      Plaintiffs' Plans cover treatment for mental health care on an inpatient and outpatient basis.  Plaintiffs contacted Blue Cross and Blue Shield (BCBS), the designated administrator of Plaintiff's Plan, in early 2014 when deciding whether or not to enroll in the ConAgra Foods, Inc. Medical Plan to determine whether Applied Behavioral Analysis (ABA Therapy) to treat her son's autism spectrum disorder ("ASD") was a covered benefit under the Plan.  BCBS informed Plaintiffs that ABA Therapy is a covered benefit and would be covered at 90% coinsurance after Plaintiffs met their deductible.  Plaintiffs also asked if Central Valley Autism Project (CVAP) was an in-network provider because Plaintiff Benjamin Raygoza has been receiving services through them since 2013.  Again, BCBS informed Plaintiffs that CVAP was an in-network provider.  CVAP also contacted BCS to inquire if ABA therapy provided by CVAP was a covered benefit under Plaintiffs Plan.  CVAP was also informed by BCBS, Plaintiffs decided to enroll in the Plan.

3.     Plaintiffs' Plans have allegedly delegated responsibility for adjudicating mental health claims to BCBS Nebraska.  Pursuant to this delegation, BCBS Nebraska follows—in completing its claims administration duties for the Plan—the guidelines, policies, and procedures as set forth in ConAgra Foods Claims Administration Guidelines for use in completing its reviews of mental and behavioral health claims.

4.     Plaintiffs' Plans have no role in the creation and promulgation of any of these guidelines, or in BCBS Nebraska's decision to approve or deny any claim.

5.     In light of its central role in the mental health and substance abuse-related claim adjudication process, BCBS Nebraska is an ERISA fiduciary as defined by 29 U.S.C. Section 1104(a).  As such, it is legally required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan.  It must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers, so long as such terms are consistent with ERISA.  As a fiduciary, BCBS Nebraska owes a duty of loyalty to plan participants and beneficiaries. It must also refrain from any conduct that violates state or federal law.

6.     BCBS Nebraska suffers from an inherent conflict of interest in its role as mental health claims administrator.  Every claim denied by BCBS Nebraska saves money for BCBS Nebraska and artificially increases its profits.  Though Plaintiffs' Plan is "self-funded" and requires that benefits be paid, in the first instance, from the assets of Plaintiffs' group plan sponsors, most self-funded plans have stop-loss provisions that obligate the insurer to pay benefits that exceed a certain threshold.  Thus, every claim BCBS Nebraska denies makes it less likely that such a stop-loss threshold will be crossed and reduces the possible stop-loss liability of BCBS.  In addition, Plaintiffs are informed and believe that BCBS Nebraska provides a number of plans that are "fully-insured," meaning that health care benefits are paid by Defendant BCBS Nebraska. Thus, every

Complaint

ABA therapy claim denied by BCBS saves BCBS money and artificially increases BCBS's profits.

7.     Against this backdrop, BCBS Nebraska has violated its fiduciary duties, as detailed herein.

8.     Generally accepted standards of care are promulgated by the CDC, National Institute of Mental Health (NIMH), which is the principal institute for research at the NIH, along with the National Institute on Deafness and Other Communication Disorders (NIDCD), the Eunice Kennedy Shriver National Institute on Child Health and Human Development (NICHD), the National Institute of Environmental Health Sciences (NIEHS), and the National Institute of Neurological Disorders and Stroke (NINDS).

9.     Together, these five institutes have established the Autism Centers of Excellence (ACE).  Generally speaking, these promulgated standards identify a host of treatments relevant to the management and development of persons diagnosed with ASD. Among these is ABA therapy.

10.     Although BCBS asserts in its guidelines and in communications with insureds that its LOCs and CDGs are consistent with generally accepted standards of care, and that it applies generally accepted guidelines in making benefit determinations, neither is true.  BCBS has promulgated LOCs and CDGs that are much more restrictive than the generally accepted standards of care in the mental health community.  BCBS has created its LOCs to make them focused on the presence of acute symptoms (and therefore more restrictive), despite the fact that generally accepted guidelines highlight chronic considerations. As detailed herein, whereas BCBS's guidelines restrict ASD treatment to "acute" situations that can be addressed quickly, such restrictions on ASD treatment are not found in any of the generally accepted standards of care.  Quite the opposite, generally accepted standards recognize that treatment for individuals with ASD is appropriate at an early age and for an extended period of time as that person ages and is faced with ongoing challenges throughout their lives.

11.     Plaintiffs' Plans purport to include mental health care treatment, yet BCBS denies ABA Therapy for the treatment of autism. In developing its LOCs, BCBS had a fiduciary duty to Plaintiffs (and to other members of plans administered by BCBS) to promulgate criteria that faithfully ensure that a particular level of care is both covered by the terms of Plaintiffs' Plans and consistent with generally accepted standards of care. BCBS breached this duty by supplanting generally accepted treatment standards in the mental health field with standards that promote the self-serving, cost-cutting preferences of BCBS and its corporate affiliates. By adopting guidelines that are inconsistent with, and much more restrictive than, those that are generally accepted in the medical community, BCBS breached its fiduciary duty to act solely in the interests of participants and beneficiaries for the "exclusive purpose" of "providing benefits" with reasonable "care, skill, prudence, and diligence" and in accordance with Plaintiffs' Plans.

12.     BCBS further breaches its fiduciary duties by developing guidelines that ignore explicit state and federal laws mandating parity for mental health services. BCBS arbitrarily restricts rehabilitation services, such as ABA Therapy for members diagnosed ASD. Yet, BCBS developed and applied its LOCs even though those LOCs are more restrictive than any standards promulgated by the medical community. Moreover, BCBS's LOCs neither state nor imply that BCBS's claims representatives should consult applicable state law before applying those LOCs.

13.     In order to remedy BCBS Nebraska's breach of fiduciary duty and other ERISA violations, Plaintiffs bring class claims against BCBS under 29 U.S.C. § 1132(a)(1)(B), 1132(a)(3)(A) and 1132(a)(3)(B). Through this action, Plaintiffs seek appropriate equitable and injunctive relief under ERISA to compel BCBS Nebraska to change its Plan language, policies and practices so as to comply with its fiduciary obligations and to make benefit determinations that are consistent with generally accepted medical standards as well as state and federal parity laws.

## DEFENDANT, JURISDICTION AND VENUE

14.     Defendant Blue Cross and Blue Shield Association ("BCBS") is a corporation with its principal place of business located in Pittsburgh, Pennsylvania. BCBS serves as the trade association that represents 37 independent BCBS companies and is responsible for drafting and promulgating the internal level of care and coverage determination guidelines referenced herein.  It also adjudicates or contracts with other entities to render benefit claim determinations for all mental and behavioral health care claims for Plaintiffs' Plans.

15.     Defendant ConAgra Foods, Inc. Medical Plan is a corporation with its principal place of business located in Omaha, Nebraska.  ConAgra is the Plan Sponsor.

16.     Jurisdiction of this Court arises pursuant to ERISA § 502(e)(1), 29 U.S.C. §1132(e)(1).

17.     Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the administration of the plan took place in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and one or more of the Defendants may be found in this district.

## BCBS'S IMPROPER DENIAL OF THE RAYGOZA'S CLAIMS

18.     Plaintiffs Gabriella Raygoza, and her son Benjamin Raygoza, reside in Lodi, California.

19.     Plaintiff Gabriella Raygoza is a participant in the "ConAgra Foods, Inc. Welfare Plan" (the Plan") and Benjamin Raygoza is a beneficiary of the Plan. This large group plan is a self-insured health insurance policy issued by BCBS in California with an effective date of January 1, 2013.  It is subject to ERISA and California state law.

20.     According to the BCBS Nebraska Summary Plan Description (SPD) that governs the Plan, all benefits are paid pursuant to the terms of the Plan, which is issued by BCBS.  The Plan identifies the "Plan's ERISA claims fiduciary, for the purpose of providing a full and fair review of claims and other specified functions.  To this end, the

Plan Administrator has delegated to BCBS the discretionary authority to construe and interpret the terms of the Plan, and to make final, binding determination concerning availability of benefits under the Plan." (Medical Plan SPD at p. 69).

21.   The Plan pays benefits for in- and out-of-network mental health care.

22.   The Plan provides for one appeal prior to the exhaustion of administrative remedies.

23.   Benjamin Raygoza is a 5-year-old child diagnosed with autism spectrum disorder  ("ASD"). Benjamin's physician prescribed ABA Therapy. Benjamin's mother, Gabriella Raygoza, sought the help of Central Valley Autism Project (CVAP), a provider of ABA Therapy.  CVAP provided ABA Therapy to Benjamin in 2013 while he was covered under a different Blue Cross medical plan.  In June, 2013, ConAgra Foods, Inc. switched health plans to Defendant Blue Cross Blue Shield of Nebraska ("BCBS Nebraska"), which covered Benjamin's ABA Therapy until December, 2013.  Benjamin continued ABA Therapy with CVAP through January and February, 2014.  However, BCBS Nebraska denied Plaintiffs' ABA Therapy provided by CVAP in 2014 stating "[t]he patient's coverage does not provide for this these service [sic]."

24.   Plaintiffs timely appealed BCBS Nebraska's improper denial, yet BCBS upheld its denial on May 19, 2014.  BCBS Nebraska stated that it denied Plaintiffs' request for reimbursement of Benjamin's January 2, 2014 through February 28, 2014 services with Central Valley Autism Project because "according to your PPO agreement, the specific services reported are excluded."  BCBS Nebraska failed to provide any additional information supporting its decision.\

25.   Plaintiffs have exhausted their administrative remedies according to the Plan requirements.

## CLASS ACTION ALLEGATIONS

26.   Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

27.     BCBS serves as the claims fiduciary for mental health treatment claims for other health insurance plans that define mental health treatment and covers treatment for Autism Spectrum Disorders (ASD) in the same way as the Raygoza Plan (i.e. treatment that is consistent with generally accepted guidelines and BCBS's LOCs).  The policies and practices that BCBS followed with respect to the claim filed by Plaintiff Raygoza are the same as those that have been applied by BCBS to other similarly situated insureds seeking mental health treatment benefits under their health plans.

28.     As such, pursuant Federal Rule of Civil Procedure 23, Plaintiffs bring their claims on behalf of a putative class of similarly situated individuals as noted in the causes of action below. The class (the "Class") is defined as follows:

> All participants or beneficiaries in an insurance plan governed by ERISA, for which BCBS, BCBS Nebraska or any other independent Blue Cross and Blue Shield independent entities have been delegated the authority to make coverage decisions with respect to claims for mental health treatment, who sought and were denied coverage for all or a portion of applied behavioral analysis or ABA Therapy, within the applicable statute of limitations.

29.     The members of the Class can be objectively ascertained through the use of information contained in BCBS's files because BCBS knows who its insureds are, which plans they are insured by, what type of claims they have filed, and how those claims were adjudicated.

30.     There are so many persons within the putative classes that joinder is impracticable.

31.     Certification of the Class is desirable and proper because there are questions of law and fact in this case that are common to all members of each of the class. Such common questions of law and fact include, but are not limited to, the following:

> a)      What legal duties does ERISA impose upon BCBS when it is serves as a claims fiduciary for mental health claims;

b)  Does BCBS engage in a fiduciary act when it promulgates mental health level of care and coverage determination guidelines;

c)  Are BCBS's level of care and coverage determination guidelines consistent with those that are generally accepted in the medical community;

d)  Does BCBS's promulgation of these policies constitute a breach of fiduciary duty;

e)  Does BCBS engage in a fiduciary act when it adjudicates a claim for benefits;

f)  Does BCBS's systemic restriction of ABA Therapy to treat members with ASD constitute a breach of fiduciary duty;

g)  What remedies are available if BCBS is found liable for the claims alleged.

32.     Certification is desirable and proper because Plaintiffs' claims are typical of the claims of the members of the classes Plaintiffs seek to represent.

33.     Certification is also desirable and proper because Plaintiffs will fairly and adequately protect the interests of the classes they seek to represent. There are no conflicts between the interests of Plaintiffs and those of other members of the classes, and Plaintiffs are cognizant of their duties and responsibilities to the entire class.  Plaintiffs' attorneys are qualified, experienced and able to conduct the proposed class action litigation.

34.     It is desirable to concentrate the litigation of these claims in this forum.  The determination of the claims of all class members in a single forum, and in a single proceeding would be a fair and efficient means of resolving the issues in this litigation.

35.     The difficulties likely to be encountered in the management of a class action in this litigation are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the class through numerous

Complaint

separate actions.

## FIRST CAUSE OF ACTION

## FOR DENIAL OF PLAN BENEFITS UNDER ERISA

## BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS

36.     Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.  The First Cause of Action is brought under 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

37.     Under ERISA, BCBS must comply with the terms and conditions of its health care plans in making benefit determinations and processing health care claims on behalf of its insureds.

38.     Plaintiff Gabriella Raygoza is a participant in the "Blue Cross Blue Shield (BCBS) Health Plan" ("the Plan") and Benjamin Raygoza is a beneficiary of the Plan, with an effective date of January 1, 2013 and subject to ERISA.

39.     The Plan pays benefits for in- and out-of-network mental health care.

40.     Benjamin Raygoza is a 5-year-old child diagnosed with autism spectrum disorder ("ASD").  Benjamin's physician prescribed ABA Therapy and his mother, Gabriella Raygoza, sought the help of Central Valley Autism Project (CVAP), a provider of ABA Therapy.  CVAP provided ABA Therapy to Benjamin in 2013 while he was covered under a different BCBS medical plan. In June, 2013, ConAgra Foods, Inc. switched health plans to BCBS, which covered Benjamin's ABA Therapy until December, 2013.  Benjamin continued ABA Therapy with CVAP through January and February, 2014.  Despite the BCBS Plan stating that it covers mental health care, BCBS Nebraska denied Plaintiffs' ABA Therapy provided by CVAP in 2014 stating "[t]he patient's coverage does not provide for this these service [sic]."

41.     The Plan requires one appeal prior to the exhaustion of administrative remedies.  Plaintiffs timely appealed BCBS Nebraska's improper denial, yet BCBS Nebraska upheld its denial on May 19, 2014.  BCBS Nebraska stated that it denied

Plaintiffs' request for reimbursement of Benjamin's January 2, 2014 through February 28, 2014 services with Central Valley Autism Project because according to your PPO agreement, the specific services reported are excluded.  BCBS Nebraska failed to provide any additional information supporting its decision. Plaintiffs have exhausted their administrative remedies according to the Plan requirements.

42.    Defendants wrongfully denied Plaintiff's claim and breached all of the obligations owed to Plaintiff and her son in that Defendant:

    a)    Failed to pay medical benefit payments to Plaintiff at a time when Defendants knew, or should have known, that Plaintiff was entitled to receive those benefits under the terms of the Plan.  Even though Defendants had such knowledge, they denied the disputed medical benefits;

    b)    Withheld medical benefits from Plaintiff knowing Plaintiff's claim on her son's behalf were valid, for the reasons set forth in subparagraph (a) above;

    c)    Failed to provide prompt and reasonable explanation of the basis of its denial;

    d)    After Plaintiff's claim were denied in whole or in part, Defendants failed to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect her claim along with an explanation of why such material is or was necessary; and

    e)    Failed to properly and adequately investigate the merits of Plaintiff's medical claims.

43.    In administering its ERISA plans, BCBS acts as a fiduciary and must comply with its fiduciary obligations toward the participants and beneficiaries of the ERISA plans.  According to the BCBS' SPD that governs the Plan, all benefits are paid pursuant to the terms of the Plan, which is issued by BCBS. The Plan identifies the

"Plan's ERISA claims fiduciary, for the purpose of providing a full and fair review of claims and other specified functions. To this end, the Plan Administrator has delegated to BCBS the discretionary authority to construe and interpret the terms of the Plan, and to make final, binding determination concerning availability of benefits under the Plan." (SPD at p. 69).

44.     As an ERISA fiduciary, and pursuant to 29 U.S.C. Section 1104(a), BCBS, BCBS Nebraska and all other BCBS entities are required to discharge their duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan.  They must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. They must conform their conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

45.     BCBS and BCBS Nebraska violated these duties by applying restrictive level of care and coverage determination guidelines discussed herein. Despite the fact that the health insurance plans that insure Plaintiffs and the Class provide for insurance coverage for treatment of mental health care that includes treatment for ASD, including but not limited to ABA Therapy, the fact that generally accepted standards of care are widely available and well-known to BCBS, and that fact that BCBS asserted that it utilized internal claim guidelines which were purportedly consistent with those that are generally accepted, and that BCBS Nebraska applied guidelines that are far more restrictive than those that are generally accepted.  In doing so, BCBS and BCBS Nebraska do not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits."  They did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.  It did not act in accordance with the terms of Plaintiffs' Plans. They disregarded clear language in its Plans to deny medically necessary mental health care services its insureds received,

thereby denying them proper reimbursement.

46. Instead, BCBS and BCBS Nebraska elevated its own interests and those of its corporate affiliates above the interests of plan participants and beneficiaries. By promulgating improperly restrictive guidelines and disregarding the plain terms of its own Plans, BCBS and BCBS Nebraska artificially decreased the number and value of covered claims thereby benefiting its corporate affiliates at the expense of insureds.

47. ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), states, in relevant part, that a plan fiduciary must discharge its duties with respect to a plan "solely in the interest of the participants and beneficiaries and … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV."

48. ERISA § 409(a), 29 U.S.C. § 1109(a), states, in relevant part: Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the Plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. ERISA provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

49. Plaintiffs and the class are entitled to recover benefits due them due to unnecessarily restrictive and illegal exclusions put forth under the Plans limiting treatment for ASD, including ABA Therapy. They are also entitled to a declaration of

present and future rights to coverage of ABA Therapy to treat ASD.

50.    BCBS's breach of fiduciary duties is underscored by the fact that it also ignored state and federal laws when making medical necessity determinations and unfairly restricting treatment to children diagnosed with ASD in need of ABA Therapy.

51.    Plaintiff is informed and believes and thereon alleges that the named defendants wrongfully denied medical benefits under the healh Plan by other acts or omissions of which Plaintiff was presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make defendants aware of once said acts or omissions are discovered by Plaintiff.

52.    Following the denial of Plaintiff's health claims submitted on her son's behalf under the Medical Plan, Plaintiff exhausted all administrative remedies required under ERISA. Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the Medical Plan.   Attached as Exhibit A is Plaintiff's appeal letter dated April 17, 2014.  Attached as Exhibit B is BCBS Nebraska's May 19, 2014 letter upholding its denial of Plaintiff's claims.

53.    As a proximate result of the denial of health insurance benefits due Plaintiff, Plaintiff has been damaged in the amount of all of the medical bills incurred, in a total sum to be proven at the time of trial.

54.    As a further direct and proximate result of this improper determination regarding Plaintiff's medical claims, Plaintiff in pursuing this action has been required to incur attorneys' costs and fees.  Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant(s).

55.    The wrongful conduct of the Medical Plan, the Medical Group and BCBS has created uncertainty where none should exist, therefore, Plaintiff is entitled to enforce her rights under the terms of the Medical Plan and to clarify rights to future benefits under the terms of the Medical Plan.

**SECOND CAUSE OF ACTION**

**CLAIM FOR VIOLATION OF CALIFORNIA'S MENTAL HEALTH PARITY ACT BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**

56.     ERISA provides courts with the power to enjoin violations of state law regulating insurance that have become part of the terms of the plan. *See, e.g.*, *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 721 (9th Cir. 2012) *cert denied* 133 S. Ct. 1492 (U.S. 2013).

57.     The terms of an ERISA plan include non-preempted provisions of substantive state and federal law, such as the requirements in the California Mental Health Parity Act.  BCBS has failed to comply with the terms of the Plan, which include the requirements of the Parity Act and its implementing regulations.

58.     California enacted Health and Safety Code §1374.72 and Insurance Code §10144.5, referred to as California's Mental Health Parity Act.  It requires, in part, that: (a) Every health care service plan contract issued, amended, or renewed on or after July 1, 2000, that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age, and of serious emotional disturbances of a child, as specified in subdivisions (d) and (e), under the same terms and conditions applied to other medical conditions as specified in subdivision (c).… (d) For the purposes of this section, "severe mental illnesses" shall include: (1) Schizophrenia. (2) Schizoaffective disorder. (3) Bipolar disorder (manic-depressive illness). (4) Major depressive disorders. (5) Panic disorder. (6) Obsessive-compulsive disorder. (7) Pervasive developmental disorder or **autism.** (8) Anorexia nervosa. (9) Bulimia nervosa. (emphasis added).

59.     The statute makes very clear that mental illness and mental health benefits must be commensurate with coverage for physical illnesses and injuries.

60.     The California Code of Regulations provides important clarification of the

18

Complaint

intended scope of the Parity Act.  It states that: (a) The mental health services required for the diagnosis, and treatment of conditions set forth in Health and Safety Code section 1374.72 shall include, when medically necessary, all health care services required under the Act including, but not limited to, basic health care services within the meaning of Health and Safety Code sections 1345(b) and 1367(i), and section 1300.67 of Title 28. These basic health care services shall, at a minimum, include crisis intervention and stabilization, psychiatric inpatient hospital services, including voluntary psychiatric inpatient services, and services from licensed mental health providers including, but not limited to, psychiatrists and psychologists. (28 C.C.R.§1300.74.72.)

61.    The BCBS Plans list covered benefits as Mental Illness and Substance Dependence and Abuse, inpatient and outpatient, are covered with the Plan paying 90% after the deductible is met.

62.    The BCBS Plans state certain expenses are NOT covered and list types of expenses that are not covered, including "direct treatment of developmental delays." Another section describing services that are not covered states "Programs for co-dependency; employee assistance; probation; prevention; educational or self-help; counseling or care for learning disorders or behavioral problems, whether or not provided in a facility that provides medical or Mental Illness treatment; programs that treat obesity, or gambling are not covered services.  The Plans do not describe any treatments for autism or ABA Therapy.

63.    BCBS's Plan language violates the California Mental Health Parity Act and its implementing regulations.  BCBS's Developmental Disability Exclusion, as noted above, applies to services related to developmental disabilities (which are considered mental health conditions), yet does not apply to services related to medical or surgical conditions.

**THIRD CAUSE OF ACTION**

**CLAIM FOR VIOLATION OF FEDERAL MENTAL HEALTH PARITY ACT**

**BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**

64.     Plan participants and beneficiaries of group policies may bring actions under ERISA's civil enforcement provision to challenge violations of ERISA and the terms of ERISA plans. The ERISA civil enforcement provision provides: A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3). Because the Federal Parity act is enacted as part of ERISA, it is enforceable through a cause of actions under § 1132(a)(3) as a violation of a "provision of this subchapter."

65.     The Federal Parity Act requires health care plans issued by employers with more than 50 employees, including BCBS Plan issued to Plaintiffs, that choose to provide mental health and substance abuse benefits, to cover them, as written and applied, in parity with medical/surgical benefits offered within the same classifications.

66.     The Federal Parity Act, without exception, prohibits separate treatment limitations that apply only with respect to mental health and substance use disorder benefits.  The implementing regulations under the Federal Parity Act further requires plans that provide any benefits for mental health conditions or substance use disorders to provide benefits for such conditions or disorders in each classification for which any medical/surgical benefits are provided.  "A Plan must apply these terms uniformly for both medical/surgical benefits and mental health or substance use disorder benefits.  75 Fed. Reg. 5410, 5413 (Feb. 2, 2010).   Though the BCBS Plan indisputably covers mental health care for in- and out-of-network mental health care, yet does not cover ABA Therapy to treat autism. BCBS does not make similar exclusions for medical/surgical benefits. This limitation applies only with respect to mental health benefits and therefore

20

violates the Federal Parity Act.

67.     The Federal Parity Act further specifies "[t]he reason for any denial under the plan … with respect to mental health or substance use disorder benefits in the case of any participant or beneficiary shall, on request or as otherwise required, be made available by the plan administrator … to the participant or beneficiary in accordance with regulations."  This requirement is repeated and strengthened in the Interim Final Regulations, at 75 Fed. Reg. 5410, 5417(D)(1) and (2).

68.     The regulations make it mandatory that plans disclose the "reasons for denial," even without a request from a beneficiary, and further require compliance with the detailed disclosure requirements of the ERISA regulations, which provide as follows:

(g) Manner and content of notification of benefit determination.

(1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination . . . The notification shall set forth, in a manner calculated to be understood by the claimant-

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

…

(v) In the case of an adverse benefit determination by a group health plan . . .

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar

criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request

69.     BCBS failed to comply with these requirement by failing to cite to its plan language relied upon for its denials, citing incomplete portions and omitting key elements of its internally developed guidelines, thereby misleading beneficiaries and providers about the standards applicable to denied claims.

## FOURTH CAUSE OF ACTION
## CLAIM FOR EQUITABLE RELIEF
## BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS

70.     Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

71.     This cause of action is brought pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought to remedy First Cause of Action though Fourth Cause of Action are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

72.     Plaintiffs and the Class have been harmed, and are likely to be harmed in the future, by BCBS's breaches of fiduciary duty described above.

73.     In order to remedy these harms, Plaintiffs and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

**FIFTH CAUSE OF ACTION**

**CLAIM FOR OTHER APPROPRIATE EQUITABLE RELIEF**
**BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**

74.     Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

75.     This cause of action is brought pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent that the Court finds that the equitable relief sought to remedy the first through the fifth causes of action, pursuant to 29 U.S.C. § 1132(a)(1)(B).

76.     Plaintiffs and the Class have been harmed, and are likely to be harmed in the future, by BCBS's breaches of fiduciary duty described above.

77.     Additionally, by engaging in this misconduct, BCBS allowed its corporate affiliates to be unjustly enriched insofar as they were not required to pay benefit claims.

78.     In order to remedy these harms, Plaintiffs and the Class are entitled to appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

1.     Certifying the Class and their claims, as set forth in this Complaint, for class treatment;

2.     Appointing the Plaintiffs as Class Representatives for the Class;

3.     Designating Kantor & Kantor LLP as counsel for the Class;

4.     Declaring that BCBS's denials of ABA Therapy to treat ASD were improper;

5.     Declaring that BCBS's denial of its insureds claims for ABA Therapy for the treatment ASD violated ERISA and the benefits provided by BCBS's plans;

6.     Declaring that BCBS's internal guidelines complained of herein were

developed in violation of BCBS's fiduciary duties;

7.     Issuing a permanent injunction ordering BCBS to provide coverage to members who receive medically necessary ABA Therapy;

8.     Issuing a permanent injunction ordering BCBS to stop utilizing the guidelines complained of herein, and instead adopt or develop guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law;

9.     Ordering BCBS to reprocess claims for ABA Therapy that it previously denied (in whole or in part) pursuant to new guidelines that are consistent with those that are generally accepted and with the requirements of applicable law;

10.     Ordering BCBS to faithfully apply its promulgated guidelines (including any new guidelines BCBS may adopt or promulgate in response to the relief sought herein) in reprocessing claims ABA Therapy that it previously denied (in whole or in part), and in processing future claims ABA Therapy;

11.     Ordering BCBS to pay a surcharge to Plaintiffs and members of the Class in an amount equivalent to the revenue it generated from its corporate affiliates or the plans for providing mental health claims administration services with respect to claims filed by Plaintiffs and members of the Class, expenses that BCBS's corporate affiliates saved due to BCBS's wrongful denials, the out-of-pocket costs for ABA Therapy that Plaintiffs and members of the Class incurred following BCBS's wrongful denials, and/or pre-judgment interest;

12.     Awarding Plaintiffs' disbursements and expenses for this action, including reasonable attorneys' fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. §1132(g); and

///

///

///

Complaint

13.    Granting such other and further relief as is just and proper.


DATED:   May 18, 2015                KANTOR & KANTOR LLP




                                By: _____/s/ Glenn R. Kantor_____
                                    Glenn R. Kantor
                                    Timothy J. Rozelle

                                    Attorneys for Plaintiff,

                                    GABRIELLA RAYGOZA AND
                                    BENJAMIN RAYGOZA, on behalf of
                                    themselves and all others similarly situated

Complaint